PEOPLE v HUTTON

PEOPLE v TOWNSEND

1. BURGLARY—POSSESSION OF STOLEN PROPERTY—EVIDENCE—LARCENY.

The mere possession of stolen property is not even prima facie evidence that the person in whose possession it was found committed a burglary; the unexplained possession of property recently stolen is prima facie evidence of larceny, but unaccompanied by other facts or circumstances indicating guilt, it will not sustain a conviction of burglary.

2. BURGLARY—POSSESSION OF STOLEN PROPERTY—EVIDENCE—BREAKING AND ENTERING.

Defendants' possession of a repair bill from a television repair shop that had been burglarized is not more probative with respect to whether they did the breaking and entering than is their mere possession of television sets, tape recorders, tubes and other electronic equipment which came from the shop.

3. BURGLARY—POSSESSION OF STOLEN PROPERTY—INCONSISTENT TESTIMONY—EVIDENCE—CIRCUMSTANTIAL EVIDENCE—JURY—INFERENCES—BREAKING AND ENTERING.

An apparently fabricated story given to the police by one defendant regarding his personal interest in electronics equipment that was in an automobile when he was questioned by the police shortly after a burglary of a television repair shop which was inconsistent with his testimony at trial; that he acquired possession of the equipment rightfully and without knowledge that it had been stolen from the repair shop, could properly be

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 11] 13 Am Jur 2d, Burglary §§ 53–58.

[2] 13 Am Jur 2d, Burglary § 50.

[3] 13 Am Jur 2d, Burglary §§ 44, 50, 68.

[4] 13 Am Jur 2d, Burglary § 54.

[5] 13 Am Jur 2d, Burglary §§ 50, 62.

[6] 13 Am Jur 2d, Burglary § 44.

[7] 68 Am Jur 2d, Searches and Seizures §§ 2, 42.

[8, 10] 68 Am Jur 2d, Searches and Seizures §§ 23, 102.

[9] 68 Am Jur 2d, Searches and Seizures §§ 2–6, 48.

considered by the jury as circumstantial evidence that defendants committed the breaking and entering.

4. BURGLARY—POSSESSION OF STOLEN PROPERTY—CLOSE TIME PROXIMITY—CIRCUMSTANTIAL EVIDENCE—JURY—INFERENCES—BREAKING AND ENTERING.

The relatively close proximity in time of defendants' possession of stolen goods to a burglary is circumstantial evidence that they committed the burglary, where testimony indicated that less than five hours after a television repair shop was closed and secured the defendants had in their possession goods stolen from it; although it is conceivable that the defendants acquired the goods from some third party, the close proximity involved could reasonably support an inference by the jury that defendants committed the breaking and entering.

5. BURGLARY—POSSESSION OF STOLEN PROPERTY—EVASIVE ACTION—CIRCUMSTANTIAL EVIDENCE—INFERENCES—BREAKING AND ENTERING.

Defendants' evasive action by attempting to hide when the police arrived at the apartment in which they were staying would be consistent with their illegal possession of goods stolen from a television repair shop, however acquired, and is inconsistent with one defendant's assertion that the goods were rightfully acquired without knowledge that they had been stolen; this evasive action could support an inference by a jury that the defendants broke and entered the repair shop.

6. BURGLARY—POSSESSION OF STOLEN PROPERTY—EVIDENCE—STATEMENT—ADMISSIBILITY—BREAKING AND ENTERING.

A defendant's statement when arrested: "I didn't B & E, I just did the toting" indicates that he realized his acquisition of electronics equipment was less than rightful and could properly be considered by the jury in determining whether the defendant broke and entered the television repair shop where the goods had come from.

7. SEARCHES AND SEIZURES—INVESTIGATORY STOP—REASONABLENESS—EVIDENCE.

Police officers were aware of sufficient specific and articulable facts to justify a brief investigative stop of defendants' automobile where they sighted the automobile traveling on a city street at 4:55 a.m. with a combination television set-record player protruding from the trunk, because this is sufficient to arouse the reasonable suspicions of any competent law enforcement official.

8. SEARCHES AND SEIZURES—INVESTIGATORY STOP—EVIDENCE—PLAIN VIEW.

Police officers' testimony regarding their unaided observations of electronic equipment in the back seat of defendants' automobile falls squarely within the plain view doctrine, where their brief investigative stop was valid.

9. SEARCHES AND SEIZURES—INVESTIGATORY STOP—EVIDENCE—STATEMENTS—CONSTITUTIONAL LAW—WARNINGS OF RIGHTS.

A defendant's warning of constitutional rights need not be given by the police during a brief investigative stop and statements made by a defendant are admissible as evidence, because the defendant was stopped, not arrested, and was not taken into custody, and at the time the statements were made, the officers' function was investigative and not accusatory.

10. SEARCHES AND SEIZURES—INVESTIGATORY STOP—BURGLARY—EVIDENCE—PLAIN VIEW.

A trial court erred in allowing a police officer to testify at trial as to his discovery of a repair bill from a recently burglarized television repair shop, during a brief investigative stop of defendants' automobile when the officer's testimony concerning the bill had been ruled inadmissible at the preliminary examination on the basis that such observations were the result of an illegal search, because the testimony concerning the repair bill when taken at the preliminary hearing showed that the bill was inadmissible under the plain view doctrine.

11. SEARCHES AND SEIZURES—INVESTIGATORY STOP—BURGLARY—EVIDENCE—ADMISSIBILITY.

A trial court's error in allowing police officers' testimony concerning illegal discovery of a repair bill from a burglarized television repair shop during a brief investigative stop of defendants' automobile by the police was not reversible where the same repair bill was properly seized, approximately two hours after the stop, when defendants were arrested at an apartment and thus the repair bill itself and the officers' testimony concerning its discovery at the *time of the arrest* were both legally admissible, and where, in addition, the record indicates that the erroneously admitted testimony was used primarily for the purpose of explaining why the officers proceeded to the television repair shop not to establish defendants' guilt, and that the testimony was only cumulative in that the officers were properly allowed to testify as to their plain-view observations of

electronics equipment in the back seat, which was later identified as the stolen merchandise.

Appeals from Kent, John H. Vander Wal, J. Submitted Division 3 May 9, 1973, at Grand Rapids. (Docket Nos. 14534, 14629.) Decided November 1, 1973. Leave to appeal denied, 391 Mich 794.

Eddie L. Hutton and Johnnie L. Townsend were convicted of breaking and entering a store with intent to commit larceny. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James K. Miller,* Prosecuting Attorney, *Donald A. Johnston III,* Chief Appellate Attorney, and *Robert A. Marsac,* Assistant Appellate Attorney, for the people.

*Judith K. Munger,* Assistant State Appellate Defender, for defendants.

Before: DANHOF, P. J., and McGREGOR and MILES,* JJ.

McGREGOR, J. On April 26, 1972, at the conclusion of their joint jury trial, defendants were found guilty of breaking and entering a store with intent to commit larceny, a violation of MCLA 750.110; MSA 28.305. After motions for new trials, filed by both defendants, were denied, defendant Hutton was sentenced to six to ten years, and defendant Townsend to four to ten years. Subsequently, both defendants timely petitioned for appointment of appellate counsel and their claims of appeal were filed.

Testimony adduced at trial indicates that at

---

* Circuit judge, sitting on the Court of Appeals by assignment.

about 4:55 a.m., on August 25, 1971, two Grand Rapids police officers observed a black Ford Thunderbird with a defective license plate light, at an intersection. A combination television set/record player was protruding from the partially open trunk of the auto. The officers followed the car a short distance and then pulled it over; defendant Hutton was the driver and defendant Townsend the only other occupant. After checking defendants' identification, the officers advised Hutton that he had been stopped for a defective license plate light. However, no traffic citation was issued. In addition to the television/record player protruding from the trunk, other electronic equipment including a second television set was plainly visible in the back seat. When asked by one officer to whom this equipment belonged, defendant Townsend replied that it was his, and that he did part-time electronics work as a hobby. He further indicated that he was moving to a new address and that this early hour of the morning was the only time when he could obtain the use of an automobile.

During the course of the conversation concerning the ownership of the electronic equipment, one of the officers leaned into the back seat of the automobile and noted the serial numbers of the equipment. While doing so, he noticed a repair bill from Don's TV Repair Shop lying on top of a tube tester. The defendants were then allowed to proceed. and the officers went to Don's TV Repair, where an investigation disclosed that the shop had been burglarized. The officers immediately issued a radio alert for the Thunderbird, and at approximately 6:45 a.m. these same officers located the car; however, two men other than these defendants were now occupying the automobile and the

electronic equipment had vanished. The driver advised the officers that the defendants could be found at his apartment. The officers then went to the apartment, where they found the electronic equipment and arrested the defendants.

Additional proofs established that the goods found in the apartment were from the burglarized repair shop and had a value in excess of $100, and that the repair shop had been closed and secured at about midnight the previous evening. In addition, there was testimony that defendant Townsend stated, when arrested, "I didn't B & E, I just did the toting". For the most part, the remainder of the transcript is comprised of the testimony of various people who were at the apartment while the defendants were there. Their testimony indicates that, at about 1:30 a.m., a girl friend of the apartment's lessee gave the keys to the automobile to the defendants.

At trial, defendant Hutton did not testify. However, defendant Townsend took the stand and denied any involvement in the breaking and entering. Townsend testified that at about 11 p.m. on August 24, 1971, defendant Hutton requested his assistance in moving some "stuff" for a friend. At approximately 1 or 1:30 a.m., defendant Hutton was given the keys to the Thunderbird by a girl friend of its owner. According to Townsend, he and Hutton then proceeded to a nearby house where they found the electronic equipment lying on the ground near a basement door. This house was next door to Don's TV Repair, the burglarized establishment. After loading the equipment into the car, the men drove to the home of an acquaintance, parked in his driveway and enjoyed a bottle of wine. On the return trip to the apartment in which they were arrested the next morning, they were stopped by the police. Following that encoun-

ter, the defendants took a circuitous route to their destination to insure that the police did not follow them there. Defendant Townsend testified that he did not know the property had been stolen and denied any connection with the breaking and entering.

Defendants first contend that the trial court erred in denying their motion to dismiss because of insufficient evidence to establish that defendants committed the breaking and entering. This contention is premised on the rule, well settled in this state, that the mere possession of stolen property is insufficient, as a matter of law, to support a conviction for burglary. An early, and since undisputed, statement of the rule is found in *People v McDonald*, 163 Mich 552, 555–556; 128 NW 737, 738 (1910):

"This court is committed to the doctrine that the possession of stolen property, standing alone, is not even *prima facie* evidence that the person in whose possession it was found committed the burglary.

\*   \*   \*

"The unexplained possession of property recently stolen is *prima facie* evidence of larceny *(People v Carroll,* 54 Mich 334 [20 NW 66 (1884)]), but, unaccompanied by other facts or circumstances indicating guilt, will not sustain a conviction for burglary."

The rule that mere possession of recently stolen property is legally insufficient to sustain a burglary conviction and the distinction regarding the probative value of such possession in larceny and burglary prosecutions has been recognized on numerous occasions by the Courts of this state.[1] Since

---

[1] *People v Gordon,* 40 Mich 716 (1879); *People v Stoneman,* 7 Mich App 65; 151 NW2d 206 (1967); *People v McDonald,* 13 Mich App 226; 163 NW2d 796 (1968); *People v Brown,* 42 Mich App 608; 202 NW2d 493 (1972).

a conviction for breaking and entering with intent to commit a larceny cannot be sustained on mere proof of the defendants' unexplained possession of recently stolen property, the question becomes whether, in the instant case, there are "other facts or circumstances indicating guilt" to support such a conviction.

In his brief on appeal, the prosecutor points to four "other facts and circumstances" which allegedly take this case out of the "mere possession" category of *People v McDonald, supra.*

First, it is urged that defendants' possession of the repair bill from Don's TV Repair Shop "directly connects the defendants with the breaking and entering". Quite apart from any problems of admissibility, it is difficult to see how possession of this repair bill is any more probative with respect to whether defendants did the breaking and entering than is their possession of the television sets, tape recorders, tubes and other electronic equipment. While admittedly the repair bill does show that the goods came from the burglarized establishment, that fact was also proven by the owner's testimony. Certainly, possession of a recently stolen repair bill is no more probative than a recently stolen television set, with respect to whether the possessors committed the breaking and entering.

The prosecutor next argues that the false story given by defendant Townsend to one of the police officers is sufficient to establish the additional factor necessary to sustain the conviction. When the defendants were pulled over by the police at 4:55 a.m. on August 25, 1971, defendant Townsend stated that the equipment was his, that he did part-time electronics work as a hobby, and that he was moving to a new address. At trial, Townsend testified that these statements were false and were

made by him due to his intoxicated state at the time of the stop. Notwithstanding the claim of intoxication, defendant Townsend's false statements to the officers are certainly inconsistent with his testimony at trial, that he acquired possession of the equipment rightfully and without knowledge that it had been stolen. The apparently fabricated story given to the police regarding defendant Townsend's interest in the equipment could properly be considered by the jury as circumstantial evidence that defendants committed the breaking and entering. *People v Williams,* 11 Mich App 62; 160 NW2d 599 (1968), *aff'd* 383 Mich 118; 174 NW2d 564 (1970).

Third, the prosecutor asserts that the "relatively close time proximity of defendants' possession of the stolen goods to the crime" is circumstantial evidence that the defendants committed the crime. We agree. Testimony at trial indicated that the burglarized shop was closed and secured at approximately midnight on August 24. Less than five hours later, the defendants had in their possession the stolen goods. Although it is conceivable that the defendants acquired the goods from some third party, the close time proximity involved could reasonably support an inference by the jury that defendants committed the breaking and entering.

The prosecutor's fourth "fact or circumstance" is that defendants attempted to hide when the police arrived at the apartment in which they were staying. Although this evasive action would be consistent with the defendants' illegal possession of the goods, however acquired, it is inconsistent with defendant Townsend's assertion that the goods were rightfully acquired without knowledge that they had been stolen. Thus, defendants' evasive action could also support an inference that

the defendants broke and entered the television repair shop.

In addition to the evidence pointed out by the prosecutor, we also note defendant Townsend's statement, when arrested: "I didn't B & E, I just did the toting". This indicates that Townsend realized his acquisition of the goods was less than rightful and could properly be considered by the jury in determining whether the defendants broke and entered the repair shop.

To conclude, in addition to defendants' possession of the recently stolen property, there were sufficient "other facts or circumstances indicating guilt" to support the conviction of breaking and entering with intent to commit larceny.

Defendants next contend that the trial court erred in refusing to suppress certain testimony of the two police officers who stopped the car occupied by defendants. The allegedly inadmissible testimony concerned the officers' observations of electronic equipment in the back seat of the car, and defendant Townsend's statement to one of the officers that the equipment belonged to him. This testimony was improperly admitted, claim defendants, because the officers stopped the car, without authority, for the purpose of conducting an illegal search.

In response the prosecutor asserts that the automobile was lawfully stopped for a violation of the motor vehicle code; specifically, because its license plate light was inoperative. In addition, relying on *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), the prosecutor urges that the brief, investigative stop was justified by the circumstances irrespective of the traffic infraction.

Concerning the validity of the initial stop, the testimony adduced at both the preliminary exami-

nation and at trial is ambiguous with respect to the significance of the alleged violation of the motor vehicle code. In light of this ambiguity, we will assume, *arguendo,* that the officers did not stop the automobile solely because its license plate light was inoperative.

Nonetheless, it is apparent that the officers were aware of sufficient "specific and articulable facts" to justify the brief, investigative stop of the automobile. *Terry v Ohio, supra.* The sight of a Thunderbird travelling on a city street at 4:55 a.m. with a combination television set-record player protruding from the trunk is certainly sufficient to arouse the reasonable suspicions of any competent law-enforcement official. *Cf. People v Parisi,* 46 Mich App 322; 208 NW2d 70 (1973). In light of the circumstances incident to the stop, it was reasonable and valid under *Terry v Ohio, supra.* Further, we find nothing in the record or defendants' brief to support the assertion that the stop was made for the purpose of conducting an illegal search.

Since the brief investigative stop was valid, the officers' testimony regarding their unaided observations of the electronic equipment in the back seat of the car falls squarely within the plain view doctrine. See *Harris v United States,* 390 US 234; 88 S Ct 992; 19 L Ed 2d 1067 (1968); *People v Tisi,* 384 Mich 214; 180 NW2d 801 (1970); *People v Carl Smith,* 39 Mich App 337; 197 NW2d 528 (1972).

Regarding defendant Townsend's statements to the officers to the effect that the equipment belonged to him, defendants assert that the officers' failure to advise him of his rights in accordance with *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966), renders the officers' testimony concerning the statements inadmissible. However, as we have just noted, defend-

ants were stopped, not arrested, and were not taken into custody. In addition, at the time the statements were made, the officers' function was investigative and not accusatory. In these circumstances, *Miranda, supra,* is inapplicable. See *People v Wasson,* 31 Mich App 638; 188 NW2d 55 (1971).

The officers' testimony regarding the equipment in the back seat and defendant Townsend's statement that it belonged to him were properly admitted.

Defendants next challenge the admission of one officer's testimony concerning his discovery of the repair bill from Don's TV Repair Shop in the back seat of the Thunderbird at the time of the stop.

The facts indicate that, at the time of the stop, one of the officers leaned into the back seat of the car and noted the serial numbers of the equipment located there. While doing so, he discovered the repair bill in question on top of a tube tester. It was this discovery that prompted the officers to proceed to the burglarized repair shop after their encounter with defendants.

In response to defendants' motion to suppress, the court, at preliminary hearing, ruled inadmissible the officer's testimony concerning his observation of both the serial numbers and the repair bill, on the basis that such observations were the result of an illegal search. However, at trial, the officer was allowed to testify as to his discovery of the repair bill. Defendants assert that this was error and we agree.

In his brief on appeal, the prosecutor urges that the testimony concerning the repair bill was admissible under the plain view doctrine. The inapplicability of that doctrine is apparent from the

following exchange between defense counsel and the police officer at the preliminary hearing:

"*Q.* Officer Maier, you found proposed exhibit 1 you said in the back of a tube tester?

"*A.* It was not in the back, it was on the top of the tube tester in the back of the car.

"*Q.* I see. And that was your first observation of it?

"*A.* Yes, sir.

"*Q.* Was it taped to it or attached to it in any way?

"*A.* It was laying on the top of the tube tester.

"*Q.* Face up or face down?

"*A.* Face up.

"*Q.* Both in the car and in the house?

"*A.* Yes.

"*Q.* Not taped or held down to it in any way?

"*A.* No.

"*Q.* Just sitting there?

"*A.* Right.

"*Q.* It did not move from the time it was—

"*A.* *(Interposing)* It may have moved around.

"*Q.* How wide was this tube tester?

"*A.* About like this.

"*Q. You are telling the court then this was in plain sight at all times?*

"*A. No.*

"*Q. This was not in plain sight at all times in the car?*

"*A. No.*

"*Q.* How did you happen to observe it in the car?

"*A.* While I was checking the equipment in the car I ran across it.

"*Q. You entered the car to check this equipment?*

"*A. Somewhat, yes.*

"*Q. You leaned in?*

"*A. Right.*

"*Q.* At that time did you advise either Mr. Townsend or Mr. Hutton that they were under arrest?

"*A.* No.

"*Q.* Did you at that time have any reason to place them under arrest for anything?

"*A.* No." (Emphasis added.)

Because the prosecutor's supposed justification for admission of the officer's testimony concerning the repair bill is without merit, we agree with defendants, that admission of that testimony was error. Nonetheless, our review of the record convinces us beyond a reasonable doubt that the error did not contribute to defendants' convictions and thus does not mandate our reversal of those convictions. See *Chapman v California,* 386 US 18; 87 S Ct 824; 17 L Ed 2d 705; 24 ALR3d 1065 (1967), and *Fahy v Connecticut,* 375 US 85; 84 S Ct 229; 11 L Ed 2d 171 (1963).

We so conclude primarily because the same repair bill was properly seized, approximately two hours after the stop, when defendants were arrested at the apartment of a friend. Thus, the repair bill itself, and the officers' testimony concerning its discovery *at the time of the arrest* were both legally admissible. In light of this fact, it seems apparent that the error of allowing testimony concerning discovery of the repair bill at the time of the stop is not reversible. In addition, the record indicates that the erroneously admitted testimony was utilized primarily for the purpose of explaining why the officers proceeded to Don's TV Repair Shop, and not to establish defendants' guilt. Finally, testimony concerning the discovery of the repair bill was only cumulative in that the officers were properly allowed to testify as to their plain view observations of the equipment in the back seat, which was later identified as the stolen merchandise.

We have carefully considered defendants' remaining contentions. None require reversal of de-

fendants' convictions and all are without sufficient significance to warrant extended discussion.

Affirmed.

All concurred.